Slip Op. 11- 130

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| FORD MOTOR COMPANY,  :<br>  :<br>Plaintiff,  :<br>  :<br>v.  :<br>  :<br>UNITED STATES OF AMERICA, U.S.  :<br>DEPARTMENT OF HOMELAND  :<br>SECURITY, U.S. CUSTOMS AND  :<br>BORDER PROTECTION,  :<br>  :<br>Defendants.  :<br>  : | Before:  WALLACH, Judge<br>Court No.: 09-00375 |

[ Defendants' Motion to Dismiss is DENIED. ]

Dated: October 18, 2011

Baker & Hostetler LLP (Matthew W. Caligur and C. Thomas Kruse) and Paulsen K. Vandevert, Of Counsel, for Plaintiff Ford Motor Company.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, U.S. Department of Justice (Justin R. Miller and David S. Silverbrand); and Yelena Slepak, U.S. Customs and Border Protection, for Defendants United States, U.S. Department of Homeland Security, and U.S. Customs and Border Protection.

**OPINION**

**Wallach, Judge:**

**I
INTRODUCTION**

Defendants United States of America, U.S. Department of Homeland Security, and U.S. Customs and Border Protection move to dismiss Plaintiff Ford Motor Company's Second Amended Complaint for lack of subject matter jurisdiction. Defendants' Motion to Dismiss, Doc. No. 74 ("Defendants' Motion"); Defendants' Memorandum of Support of Its Motion to Dismiss,

Doc. No. 74 at 9-25 ("Defendants' Memo").  Because Plaintiff's claims are ripe and within the court's 28 U.S.C. § 1581(i) jurisdiction, Defendants' Motion is DENIED.

## II
## BACKGROUND

A "drawback" is a refund of duties paid on an import that has been exported or destroyed, 19 U.S.C. § 1313; 19 C.F.R. § 191.2(i)-(k); a "drawback entry" is the form filed by a claimant to request a drawback payment, 19 C.F.R. § 191.2(j).[1]  Customs finalizes that payment through "liquidation" of the drawback entry. 19 C.F.R. §§ 159.1, 191.81.[2]  In some circumstances, Customs pays the claimant the estimated drawback before it liquidates the drawback entry. 19 C.F.R. § 191.92.  Subject to certain exceptions, entries that are not affirmatively liquidated by Customs in a timely manner are "deemed liquidated" by operation of law at the amount originally asserted by the claimant. 19 U.S.C. § 1504(a)(2)(A).  If Customs determines that it has overpaid on a drawback entry that has already liquidated (whether affirmatively or by operation of law), it normally cannot recover the difference from the claimant. See 19 U.S.C. §§ 1514(a), 1520(a)(4); United States v. Nat'l Semiconductor Corp., 30 CIT 769, 774 (2006).

For the deemed liquidation of drawback entries, Congress enacted the current 19 U.S.C. § 1504(a)(2) as part of the Miscellaneous Trade and Technical Corrections Act of 2004. See Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. 108-429, §1563, 118 Stat. 2434 (2004).  Although Plaintiff and Defendants disagree on the proper interpretation of this provision, see Second Amended Complaint for Injunctive and Declaratory Relief, Doc. No. 38 at

---

[1] A "drawback entry" forms only part of a "drawback claim." 19 C.F.R. § 191.2(j)-(k). However, "[t]hese terms are often used interchangeably by claimants and Customs." Defendants' Memo at 4 n.2; see also 19 U.S.C. § 1504(a)(2) ("Entries or claims for drawback").

[2] Customs also liquidates entries for the underlying imports, which are known as import entries or consumption entries. 19 C.F.R. §§ 159.1; 191.81.

7-10 ("Second Amended Complaint"); Defendants' Memo at 2-4, resolution of Defendants' Motion does not depend on the substance of that disagreement.³

The instant action includes all drawback entries that Plaintiff filed prior to December 3, 2004 and that Customs had not affirmatively liquidated when the action commenced on September 2, 2009. See Second Amended Complaint, Doc. No. 38 at 2-3; id., Ex. A; Plaintiff's Consent Motion to Sever Liquidated Drawback Claims, Doc. No. 65 at 3; Summons, Doc. No. 1 at 1; Defendants' Memo at 5-6. The 17 drawback entries specifically identified by Plaintiff were all filed between 1996 and either 1997 or 1998. Second Amended Complaint at 6. Plaintiff argues that all of these entries are now deemed liquidated. Id. at 3. Accordingly:

> [P]ursuant to 28 U.S.C. § 1581(i), 5 U.S.C. § 706, 28 U.S.C. § 2643(c)(1), and 28 U.S.C. § 2201, Ford seeks a declaratory judgment from the Court that (1) the Drawback Claims have been deemed liquidated by operation of law pursuant to 19 U.S.C. § 1504(a)(2); (2) Customs has no legal authority to review and/or

---

³ 19 U.S.C. § 1504(a)(2) provides as follows:

(2) Entries or claims for drawback

(A) In general

Except as provided in subparagraph (B) or (C), unless an entry or claim for drawback is extended under [19 U.S.C. § 1504(b)] or suspended as required by statute or court order, an entry or claim for drawback not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant at the time of entry or claim. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

(B) Unliquidated imports

An entry or claim for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A), or within the 1-year period described in subparagraph (C), shall be deemed liquidated upon the deposit of estimated duties on the unliquidated imported merchandise, and upon the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim. Such a request must include a waiver of any right to payment or refund under other provisions of law. The Secretary of the Treasury shall prescribe any necessary regulations for the purpose of administering this subparagraph.

(C) Exception

An entry or claim for drawback filed before [December 3, 2004], the liquidation of which is not final as of [December 3, 2004], shall be deemed liquidated on the date that is 1 year after [December 3, 2004], at the drawback amount asserted by the claimant at the time of the entry or claim.

19 U.S.C. § 1504(a)(2).

>affirmatively liquidate any drawback claims that have been deemed liquidated by operation of law; and (3) any action by Customs to review and/or affirmatively liquidate drawback claims that have been deemed liquidated by operation of law is [unlawful]. . . .  Ford also seeks a permanent injunction enjoining Customs from (1) reviewing and/or affirmatively liquidating these Drawback Claims; (2) taking any action adverse or detrimental to Ford relating to these Drawback Claims; and (3) restraining Customs from taking any steps or actions to collect additional duties from Ford any amounts relating to these Drawback Claims, and taking any actions adverse to Ford in respect of these Drawback Claims, including, but not limited to placing Ford on national sanctions.

Id. at 3-4.

Although Defendants do not explicitly state whether they believe any of these drawback claims are deemed liquidated, see generally Defendants' Memo; Defendants' Reply Memorandum in Support of Its Motion to Dismiss, Doc. No. 117 ("Defendants' Reply"), they do note that "Customs is actively liquidating" certain drawback entries filed by Plaintiff, Defendants' Memo at 5.  Indeed, after Plaintiff commenced this action, Customs affirmatively liquidated five of the drawback entries included in it. See Second Amended Complaint at 3, 15; id., Ex. A at 1; Defendants' Memo at 6, 23.

Defendants now move to dismiss this action, arguing that (1) Plaintiff's claims with respect to the 12 drawback entries that have not been affirmatively liquidated present no justiciable case or controversy and remain unripe and that (2) the court's jurisdiction under 28 U.S.C. § 1581(i) does not extend to any of the 17 drawback entries. Defendants' Memo at 9-25.

### III
### STANDARD OF REVIEW

In deciding a motion to dismiss, "the Court assumes that 'all well-pled factual allegations are true,' construing 'all reasonable inferences in favor of the nonmovant.'" United States v. Islip, 22 CIT 852, 854, 18 F. Supp. 2d 1047 (1998) (quoting Gould, Inc. v. United States, 935

F.2d 1271, 1274 (Fed. Cir. 1991)).[4]  When the court's jurisdiction is challenged, "[t]he party seeking to invoke . . . jurisdiction bears the burden of proving the requisite jurisdictional facts." Former Emps. of Sonoco Prods. Co. v. U.S. Sec'y of Labor, 27 CIT 812, 814, 273 F. Supp. 2d 1336 (2003) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)).

## IV
## DISCUSSION

Plaintiff challenges Customs' authority to act with respect to the drawback entries at issue. See infra Part IV.A.  That challenge presents a case or controversy that is both ripe, see infra Part IV.B, and within the court's 28 U.S.C. § 1581(i) jurisdiction, see infra Parts IV.C-D.

### A
### Plaintiff Challenges Customs' Authority To Act

Plaintiff asks this court to declare that Customs lacks the statutory authority to act, and to accordingly enjoin Customs from acting, with regard to any of the drawback claims at issue. See Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, Doc. No. 114 at 1-2 ("Plaintiff's Response") ("The purpose of Ford's suit . . . is to obtain declaratory judgment that Customs has no legal authority to review, liquidate, or take any action with respect to the Drawback Claims, other than to recognize their proper status as finally liquidated at the amounts claimed by Ford."); Second Amended Complaint at 2 ("Customs is without legal authority to

---

[4] Plaintiff incorrectly implies that this rule extends to its legal arguments. See Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, Doc. No. 114 at 9 ("Plaintiff's Response") ("The only facts before the Court are the well-pled facts contained in Ford's Second Amended Complaint that Customs' legal interpretation of § 1504 is deeply flawed.  In deciding the motion to dismiss, the Court should assume the truth of all well-pled factual allegations, and should construe that [sic] all reasonable inferences in Ford's favor."), 15 ("Customs is ignoring the clear Congressional mandate to bring final resolution to aging drawback claims. . . .  In some instances, Customs has affirmatively liquidated aging drawback claims and issued duty bills to Ford, ignoring the fact that 19 U.S.C. § 1504 provides that the aging drawback claims have been deemed liquidated by operation of law at the value claimed by the importer at the time of entry.  Under these facts, which must be taken as true, Ford's declaratory judgment action is ripe for review.").

5

review and/or liquidate [these] drawback claims"), 3-4 (seeking injunctive and declaratory relief), 24-25 (same).

Plaintiff's essential challenge is therefore to the existence, rather than to the exercise, of Customs' authority over these drawback claims. See Plaintiff's Response at 15 ("Customs' improper actions deprive Ford of its fundamental due process rights by requiring Ford to participate in a statutorily barred and unlawful process in which the Drawback Claims that have been deemed finally liquidated by operation of law are reopened and reassessed."), 21 ("Ford is challenging the legality and constitutionality of Customs taking any action at all on [these drawback claims], including requiring Ford to verify the correctness of the claims, protest liquidations of certain [of these claims], and then to challenge Customs' actions where Customs' unlawful 'decisions' were adverse to Ford."); Ford's Sur-Reply in Opposition to Defendants' Motion to Dismiss and Brief in Support, Doc. No. 46 at 2 ("Plaintiff's Sur-reply") ("Customs is currently and actively engaged in a systematic review of the Drawback Claims, despite its lack of any legal authority to conduct such a review.").[5]  Indeed, Plaintiff argues that Customs was and is legally unable to even reach a protestable decision with respect to any of these drawback claims. Plaintiff's Response at 4-5 (citing Totes-Isotoner Corp. v. United States, 580 F. Supp. 2d 1371 (CIT 2008), aff'd 594 F.3d 1346 (Fed. Cir. 2010)).[6]

---

[5] Plaintiff's Sur-reply pertains to an earlier motion to dismiss filed by Defendants and denied without prejudice by the court. See Plaintiff's Sur-reply; April 20, 2010 Order, Doc. No. 63.

[6] The court need not and does not reach the merits of this argument.  However, even if Customs lacked authority over the entries, its "decision to liquidate certain entries anew after the entries had already been deemed liquidated is a protestable decision under 19 U.S.C. § 1514(a)(5)." Fujitsu Gen. Am., Inc. v. United States, 24 CIT 733, 739, 110 F. Supp. 2d 1061 (2000) (citing Pagoda Trading Corp. v. United States, 804 F.2d 665, 668 (Fed. Cir. 1986)).

## B
## Plaintiff's Challenge Presents A Case Or Controversy That Is Ripe

Defendants argue that Plaintiff's challenge with respect to the drawback claims that Customs has not affirmatively liquidated does not present a "case or controversy" and is not ripe. Defendants' Memo at 10-14.

An action for declaratory judgment presents a "case or controversy" if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of [that] declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)).  The court's "analysis must begin with the recognition that, where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat— for example, the constitutionality of a law threatened to be enforced.  The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." Id. at 128-29.

Even if a case or controversy exists, "injunctive and declaratory judgment remedies . . . are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution, . . . that is to say, unless the effects of the administrative action challenged have been felt in a concrete way by the challenging parties." Reno v. Catholic Soc. Servs., 509 U.S. 43, 57, 113 S. Ct. 2485, 125 L. Ed. 2d 38 (1993) (quoting in part Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)) (internal quotations omitted); see also Ford Motor Co. v. United States, 716 F. Supp. 2d 1302, 1313-14 (CIT 2010).

Although Defendants believe that Plaintiff "cannot demonstrate a concrete or definite harm . . . until Customs actively liquidates" the drawback entries at issue, Defendants' Memo at 11, the Congress that amended 19 U.S.C. § 1504 recognized that an importer is harmed if "for an open-ended time period [its drawback] claim unfairly remains subject to challenge by U.S. Customs," S. Rep. No. 108-28 at 172 (2003), quoted in Second Amended Complaint at 7.  The pre-amendment statute's lack of a timeframe for liquidation of drawback entries "create[d] an unwarranted liability and the possibility that the claimant [would] have to reimburse the U.S. Treasury any drawback monies paid to the claimant—even several years from when the claim was actually made and the money was paid to the drawback claimant." S. Rep. No. 108-28 at 172-73 (2003) (emphasis added), quoted in Second Amended Complaint at 7.  Congress intended that its changes to 19 U.S.C. § 1504 "would remove such liability overhanging drawback claimants." S. Rep. No. 108-28 at 173, quoted in Second Amended Complaint at 7-8.

On the assumption that Plaintiff's "well-pled factual allegations are true," Islip, 22 CIT at 854, the court infers, for the purpose of deciding Defendants' Motion, that Plaintiff has suffered the kind of harm described by Congress. Compare Second Amended Complaint at 6, 9-12 with S. Rep. No. 108-28 at 172-73.  Because Customs asserts authority over the drawback entries at issue, Plaintiff continues to face liabilities of uncertain magnitude and duration.  Some of these drawback entries are nearly 15 years old. Second Amended Complaint at 6.  Plaintiff disposed of its pertinent records after maintaining them "for the three year period . . . required by the statute and Customs' regulation," id., and Customs has indicated that "no documents or records relating to either the Ford drawback claims or the underlying consumption entries are available due to their age," id. at 12.  Nonetheless, after "not communicat[ing] with Ford in any way with respect to either the Drawback Claims or the underlying consumption entries" for nine years, id. at 6,

8

Customs began soliciting information from Plaintiff in 2008, see Second Amended Complaint at 9-10 (alleging that Customs "directed Ford to review" and as necessary amend certain drawback entries), 11-12 (alleging that "Customs asked Ford to provide . . . information and records" that Customs believed "related to some, if not all, of" the drawback entries). These allegations, if true, demonstrate an immediate, real, and substantial controversy, MedImmune, 549 U.S. at 127, "the effects of [which] have been 'felt in a concrete way'" by Plaintiff, Reno, 509 U.S. at 57 (quoting Abbot Laboratories, 387 U.S. at 148-49).[7]

### C
### The Court Has Jurisdiction Under 28 U.S.C. § 1581(i) To Hear Plaintiff's Claims

Defendants argue that the court lacks jurisdiction under 28 U.S.C. § 1581(i) because Plaintiff "has an available and adequate remedy under 28 U.S.C. § 1581(a)." Defendants' Memo at 9. Defendants make this argument with respect to all the drawback entries at issue—that is, both those that have been affirmatively liquidated, see id. at 14-22, and those that have not, see id. at 23-25.

This court has previously identified three jurisdictional bases under which an importer can make a deemed liquidation argument.[8] First, the importer can wait for Customs to affirmatively liquidate, protest the liquidation under 19 U.S.C. § 1514, and then, if Customs denies the protest, challenge that denial under 28 U.S.C. § 1581(a). Fujitsu Gen. Am., Inc. v. United States, 24 CIT 733, 744-45, 110 F. Supp. 2d 1061 (2000) (holding that an importer that failed to protest an affirmative liquidation cannot bring the same challenge under 28 U.S.C. §

---

[7] The inference, for the purpose of deciding Defendants' Motion, that Plaintiff was harmed does not imply that Customs' actions were unlawful.

[8] Although the cases discussed in this paragraph involve consumption entries rather than drawback entries, the court discerns no reason why this would affect the jurisdictional analysis. Compare 19 U.S.C. § 1504(a)(1) with id. § 1504(a)(2); cf. S. Rep. No. 108-28 at 173 (2003) ("This change would remove such liability overhanging drawback claimants by requiring U.S. Customs (1) to liquidate existing drawback claims, and (2) to liquidate future drawback claims within a specified period of time, as U.S. Customs already does for merchandise entered for consumption.").

1581(i)), aff'd, 283 F.3d 1364 (Fed. Cir. 2002).  Second, the importer can wait for Customs to affirmatively liquidate, decline to pay whatever amount it is billed, and then assert an affirmative defense of deemed liquidation if the United States brings an enforcement action under 28 U.S.C. § 1582. Id. at 743-44 (citing United States v. Cherry Hill Textiles, Inc., 112 F.3d 1550, 1560 (Fed. Cir. 1997)).  Third, the importer need not wait at all:  As long as Customs has yet to affirmatively liquidate, the importer can bring an action under 28 U.S.C. § 1581(i) to obtain "a declaratory judgment from the CIT confirming that there was a deemed liquidation." Ford Motor, 716 F. Supp. 2d at 1312 (quoting Fujitsu, 24 CIT at 739)[9]; see also Fujitsu, 24 CIT at 745 n.11; 28 U.S.C. § 2201 (declaratory relief).

Although the instant action follows this third jurisdictional path, see Second Amended Complaint at 3-4; Plaintiff's Response at 12, Defendants nonetheless argue that "[i]f the Court were to . . . allow Ford to proceed in the context of section 1581(i), it would be allowing Ford to circumvent the jurisdictional scheme of section 1581," Defendants' Memo at 21.  According to Defendants:

> Ford can bring about the liquidation of its drawback entries by depositing estimated duties on the unliquidated imported merchandise and filing a written request with Customs for the liquidation of the drawback entry or claim. 19 U.S.C. § 1504(a)(2)(B).  Once the drawback entries are liquidated pursuant to this framework, Ford can protest the liquidation, and if necessary, commence an action pursuant to 28 U.S.C. § 1581(a).  Thus, unlike Fujitsu, seeking a declaratory judgment in the context of section 1581(i) is not Ford's only remedy.

Id. at 20; see also id. at 14-15 (citing 19 U.S.C. § 1504(a)(2)(B) and 19 C.F.R. § 19.81(a)-(c)).

The Federal Circuit has "consistently held that to prevent circumvention of the administrative processes crafted by Congress, jurisdiction under [28 U.S.C. § 1581(i)] may not be invoked if jurisdiction under another subsection of section 1581 is or could have been

---

[9] But see infra Part IV.D.

available, unless the other subsection is shown to be manifestly inadequate." Hartford Fire Ins. Co. v. United States, 544 F.3d 1289, 1292 (Fed. Cir. 2006) (citing Int'l Custom Prods., Inc. v. United States, 467 F.3d 1324, 1327 (Fed. Cir. 2008)). "Mere allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate." Int'l Custom Prods., 467 F.3d at 1327 (quoting Miller & Co. v. United States, 824 F.2d 961, 964 (Fed. Cir. 1987) (citing Am. Air Parcel Forwarding Co. v. United States, 718 F.2d 1546, 1550 (Fed. Cir. 1983))).[10]

Defendants are correct that a declaratory judgment is not the only remedy that is conceivably available to Plaintiff:  Like the importer in Fujitsu, Plaintiff could have waited for Customs to affirmatively liquidate the entries at issue or waited even longer for the United States to bring enforcement actions. See Fujitsu, 24 CIT at 745.  However, neither of these conditional remedies is ultimately available or sufficient to redress the particular harms alleged by Plaintiff.

Critically, requiring Plaintiff to await affirmative liquidations or enforcement actions could extend the "unwarranted liability" that Congress sought to eliminate when it amended 19 U.S.C. § 1504 in 2004. S. Rep. No. 108-28 at 172-73 (2003), quoted in Second Amended Complaint at 7; see supra Part IV.B.  Indeed, the Federal Circuit anticipated this Congressional desire to provide certainty and finality when it decided Cherry Hill in 1997. See Cherry Hill, 112

---

[10] The court expressly rejects Plaintiff's argument that because "[t]he presence or absence of jurisdiction is determined on the facts existing at the time the complaint under consideration was filed," "[t]he fact that Ford conceivably could bring a future action under 28 U.S.C. § 1581(a) is irrelevant." Plaintiff's Response at 19 (citing Keene Corp. v. United States, 508 U.S. 200, 207, 113 S. Ct. 2035, 124 L. Ed. 2d 118 (1993)). Under 28 U.S.C. § 1581, a jurisdictional basis is "available" if a party can ultimately invoke it by complying with the procedural requirements particular to it. Cf. Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992) ("[The limitation on 28 U.S.C. § 1581(i) jurisdiction] preserves the congressionally mandated procedures and safeguards . . . provided in the other subsections, . . . absent which litigants could ignore the precepts of subsections (a)-(h) and immediately file suit in the Court of International Trade under subsection (i)." (internal citations omitted)).  However, in certain circumstances, these procedural requirements can render a basis manifestly inadequate. See, e.g., United States Cane Sugar Refiners' Ass'n v. Block, 69 C.C.P.A. 172, 175 n.5, 683 F.2d 399 (CCPA 1982) ("The delay inherent in proceeding under § 1581(a) makes relief under that provision manifestly inadequate and, accordingly, the court has jurisdiction in this case under § 1581(i)."); infra Part IV.C.

11

F.3d at 1560.  Despite "the general rule that, without timely protest, all liquidations, whether legal or not, become final and conclusive under 19 U.S.C. § 1514," Fujitsu, 24 CIT at 743, the Federal Circuit held that "an importer need not protest a purported liquidation by Customs 'in order to be entitled to defend against liability on the ground of the deemed liquidation,'" id. at 744 (quoting Cherry Hill, 112 F.3d at 1560).  Without this exception:

> There would be nothing, in theory, that would prevent Customs from conducting multiple successive liquidations of the same entry and requiring the importer or surety to assume the burdens of protesting each one.  Likewise, Customs could purport to liquidate an entry anew, years after the first liquidation had become final, and thereby impose liability on the importer or surety if the importer or surety were not vigilant in watching for notice of such untimely liquidations or if it were no longer able to undertake the burden of filing and pursuing a protest.
>
> The potential for abuse from a rule requiring protests in such cases is sufficiently plain that we think it unlikely that Congress would have intended the protest requirement to apply so broadly.

Cherry Hill, 112 F.3d at 1560, quoted in Fujitsu, 24 CIT at 744.[11]

Plaintiff's allegations also suggest a "potential for abuse" that only a declaratory judgment could prevent. See generally Second Amended Complaint at 9-15.  For example, several months before Plaintiff commenced the instant action in September 2009, see Summons, Doc. No. 1, Customs affirmatively liquidated certain drawback entries from 1996-97, see Second Amended Complaint at 12, 13.[12]  According to Plaintiff, "Customs did not give or transmit notice of these liquidations, as required by 19 U.S.C. § 1500(e).  In fact, Ford learned of Customs' liquidation of these drawback claims only when it received the duty bills." Id. at 12.  Customs denied Plaintiff's subsequent protest, id. at 13, and warned that nonpayment of the duty bills

---

[11] Although a declaratory judgment action is different than an enforcement action, see Fujitsu, 283 F.3d at 1375-76, the Federal Circuit's rationale in Cherry Hill is instructive, see Fujitsu, 24 CIT at 745.

[12] These entries are not included in the instant action. See Second Amended Complaint at 4, 13; Plaintiff's Consent Motion to Sever Liquidated Drawback Claims, Doc. No. 65 at 3 ("As [certain listed] drawback claims were liquidated prior to filing, Ford agrees that the Court lacks jurisdiction under 28 U.S.C. § 1581(i) over them.").

12

would result in the actual or functional imposition of "national sanctions" on Plaintiff, id. at 14.[13] After ultimately "conclud[ing] that it had no reasonable alternative," id., Plaintiff "paid the amounts assessed on [these] Drawback Claims plus interest accrued to date," id. at 15, even though it believed that the entries had actually liquidated several years prior, id. at 10, 11.

With respect to the entries included in the instant action, Plaintiff correctly notes that it "has followed precisely the instructions promulgated by this Court regarding how to preserve and pursue judicial review where a party seeks judicial confirmation of deemed liquidation." Plaintiff's Response at 12. Regardless of whether Plaintiff is ultimately entitled to declaratory judgment in its favor, it is entitled to judicial review under 28 U.S.C. § 1581(i). Fujitsu, 24 CIT at 739, 745 n.11; cf. Ford Motor, 716 F. Supp. 2d at 1312.

### D
### All Entries At Issue Remain Within The Court's 28 U.S.C. § 1581(i) Jurisdiction

The judicial review to which Plaintiff is entitled extends to all drawback entries that are currently at issue in this action, including the five entries that Customs affirmatively liquidated after the action commenced. Defendants argue that because Plaintiff protested those liquidations and then "commenced a separate action pursuant [to] 28 U.S.C. § 1581(a)," Defendants' Memo at 23 (referencing Court No. 10-00142), "there can be no dispute that section 1581(a) is available to Ford for these . . . entries, and Ford has not demonstrated why proceeding forward with these five claims in the context of Court No. 10-00142 would be manifestly inadequate," id. In support of this argument, Defendants cite Ford Motor, 716 F. Supp. 2d at 1312-13, as well as

---

[13] According to Plaintiff, unlike the normal procedure, importers subject to national sanctions are "required to file the entry release and the entry summary, and [are] also required to pay estimated duties all at the time of initial importation." Second Amended Complaint at 14.

13

Ford Motor Co. v. United States, 751 F. Supp. 2d 1316, 1317-18 (CIT 2010) (denying Plaintiff's motion for reconsideration of Ford Motor, 716 F. Supp. 2d 1302). Defendants' Reply at 11-12.[14]

In Ford Motor, this court held that its jurisdiction under 28 U.S.C. § 1581(i) included entries that were not affirmatively liquidated but excluded entries that were affirmatively liquidated, even though those liquidations occurred after the action commenced. Compare Ford Motor, 716 F. Supp. 2d at 1312, with id. at 1310.[15] While Plaintiff's arguments in that case may have been "erroneous[]," Ford Motor, 751 F. Supp. 2d at 1317, the court does not reach a similar conclusion in the instant action.

"Jurisdiction over Customs' actions is measured at the time the summons is filed. Once entries are properly before the Court, Customs is powerless to exert authority over these entries in the absence of a Court order." Washington Int'l Ins. Co. v. United States, 25 CIT 207, 218, 138 F. Supp. 2d 1314 (2001). This follows from "the long-standing rule in the Federal courts that jurisdiction is determined at the time the suit is filed and, after vesting, cannot be ousted by subsequent events, including action by the parties." F. Alderete General Contractors, Inc. v. United States, 715 F.2d 1476, 1480 (Fed. Cir. 1983) (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 293, 58 S. Ct. 586, 82 L. Ed. 845 (1938); Rosado v. Wyman, 397 U.S. 397, 402, 90 S. Ct. 1207, 25 L. Ed. 2d 442 (1970); Dery v. Wyer, 265 F.2d 804 (2d Cir.

---

[14] Defendants also express understandable "surpris[e]" that Plaintiff's Response fails to address these critical portions of Ford Motor, 716 F. Supp. 2d at 1310. Defendants' Reply at 10 n.7.

[15] The court in Ford Motor also declined to issue a temporary restraining order, preliminary injunction, and declaratory judgment regarding the entries over which it found jurisdiction, Ford Motor, 716 F. Supp. 2d at 1312-14, reasoning in part that "Plaintiff will be able to obtain meaningful judicial review over all legitimate legal claims pertaining to" those entries by waiting for their liquidation, following "all procedural prerequisites," and ultimately bringing an action under 28 U.S.C. § 1581(a), id. at 1314. In the instant action, the court also declined to issue a preliminary injunction, see October 20, 2009 Order, Doc. No. 36 at 2, and has not had occasion to decide whether to issue the declaratory judgment that Plaintiff seeks.

1959); Hill v. Rolleri, 615 F.2d 886 (9th Cir. 1980); Craft v. United States, 218 Ct. Cl. 579, 589 F.2d 1057 (Ct. Cl. 1978)), cited in Washington Int'l, 25 CIT at 218.[16]

When Plaintiff commenced the instant action, 28 U.S.C. § 1581(i) jurisdiction existed over all relevant drawback entries that had yet to be affirmatively liquidated by Customs. See supra Part IV.C; accord Ford Motor, 716 F. Supp. 2d at 1312.  Because the court had jurisdiction then, it has jurisdiction now; Customs' post-commencement liquidations neither preclude nor postpone the court's exercise of jurisdiction over the entries at issue.

## V
## CONCLUSION

For the reasons stated above, Defendants' Motion is DENIED.

                                                          __/s/ Evan J. Wallach____
                                                          Evan J. Wallach, Judge

Dated: October 18, 2011
       New York, New York

---

[16] Moreover, it is implausible that Congress intended to permit Customs to unilaterally terminate, at any point before judgment, an importer's otherwise viable action to obtain the certainty and finality that Customs had failed to timely provide. See S. Rep. No. 108-28 at 172-73.